JOHN B. PURCELL *v.* NICHOLAS GOSHORN AND LORENIA GOS-HORN, HIS WIFE.

(No. 6,505.)

1. The law requires for the divesting the title of a *feme covert* to real estate, *an acknowledgment* in a prescribed form of a deed of conveyance, with *apt words* to pass the legal estate; an omission or defect in either part of the instrument, constitutes such want of conformity with the laws of the State, as justifies the remedy for the correction of the same, contemplated by art. 2, sec. 28, constitution of Ohio, and furnished by the act of the general assembly of April 17, 1857, amendatory of the act of March 22, 1849.

2. The statute referred to, is authorized by the constitution of the State of Ohio, and is not in conflict with the constitution of the United States.

3. The omission of the name of the wife, as one of the grantors, in the body of the deed, contrary to the manifest intention of the parties, by mistake, will be relieved against.

SPECIAL TERM.—Proceeding for the correction of a mistake in the deed of a married woman. The decision states the facts sufficiently.

*Worthington & Matthews*, for plaintiff.

*Mills & Hoadly*, for defendant.

GHOLSON, J.   This action has been submitted, as well upon certain issues of fact as upon demurrer to certain defenses stated in the answer of the defendant, Lorenia Goshorn. The decision of the case depends upon the legal effect of facts found upon the evidence, or admitted by the pleadings. These facts, as I find them, are substantially as follows: On the 13th of April, 1828, Nicholas Goshorn and Lorenia, his wife, executed and delivered to Edward Fenwick what purported to be a deed, and which was acknowledged as required by the statute then in force.   The instrument contained a description of a certain lot of land in the city of Cincinnati, of which the defendants were in possession, the same belonging to Lorenia Goshorn, in her own right in fee simple; the interest of Nicholas Goshorn being only as tenant for life, in his right as husband.   Edward Fenwick had purchased this lot of land of Nicholas Goshorn, for $1,218.75, its then estimated value; and he intended to buy, and Nicholas Goshorn intended to sell, the fee simple interest, it being the intention of the parties that the agreement should be completed by the payment of the purchase money, and the execution and delivery of a deed of conveyance from Nicholas Goshorn and Lorenia Goshorn.   Lorenia Goshorn, at the request of her husband, signed and sealed the instrument of writing purporting to be such deed of conveyance, and afterward acknowledged the same, as if it were a deed of conveyance; but did not, in any other form contract with Edward Fenwick.   Both the said Nicholas Goshorn and Lorenia Goshorn, by the execution and acknowledgment of said instrument, intended to convey to the said Edward Fenwick, not only the interest of the said Nicholas, but the estate and interest of the said Lorenia.   This intention is shown, not only by inference from the acts of the parties not evidenced by writing, but by the language of the instrument, the same describing as the interest sold intended to be conveyed, "all the estate, right, title and interest of them, the said Nicholas Goshorn and Lorenia, his wife," in the lot of land described.   The instrument does not, in the granting

clause, join the name of Lorenia Goshorn with that of Nicholas Goshorn, and for that reason alone, while the instrument is a deed good and effectual as to Nicholas Goshorn, it is, as to Lorenia Goshorn, defective, and not a conveyance of her estate. The not so joining the name of Lorenia Goshorn with that of Nicholas Goshorn, was a mistake on the part of the scrivener who wrote the instrument; and it was executed and acknowledged, and the consideration was paid and received in ignorance of any such mistake, and in the belief and with the intention that it was, and should be a valid and operative deed to convey the estate of Lorenia Goshorn; and the estate, interest, claim or demand thus acquired by Edward Fenwick, and whether limited as a conveyance of the legal estate of Nicholas Goshorn, or embracing a demand or claim for a correction of the mistake against Lorenia Goshorn, is now held by the plaintiff, John B. Purcell. This action is brought to obtain, by a proper conveyance, the title of Lorenia Goshorn.

It appears, as a part of the history of this case, found in the reports of our supreme court, that on the 17th day of June, 1845, a bill in equity was filed by the plaintiff against the defendants, to obtain the same relief asked in this action. That suit was decided by the supreme court at the December term, 1848, and is reported, 17 Ohio, 105. It was held by the supreme court that such a defective conveyance gave no claim against the wife; that there was no jurisdiction in equity to relieve, in such a case, against a married woman. Shortly after this decision, and, it may be added, in consequence of it, on the 22d March, 1849, the act "to give additional security to land titles in this State," was passed. That act provides (and its language in this connection is important): "That the several courts of *chancery* in this State shall be authorized and empowered to correct, amend and relieve against any errors, mistakes or defects occurring in the deed or other conveyance of any husband and wife, *hereafter* to be executed, and intended to convey or incumber the lands or estate of the wife, or her right of dower in the lands of her hus-

band, in the same manner and to the same extent as the said courts are, or shall be, authorized or empowered to correct errors, mistakes or defects, in the deeds or conveyances of any other persons." Swan Stat. 314.

It will be observed that the act of 22d March, 1849, is pros. spective. I think it was intended to provide for such cases as the present that might afterward occur ; but existing cases, or such as had occurred, it certainly did not affect. The legislature, at that time, very probably supposed that it was not politic or wise to make the legislation on the subject retrospective. In 1851, the present constitution of the State was adopted; and section 28 of article II provides that " the general assembly shall have no power to pass retroactive laws, or laws impairing the obligation of contracts; but may, by general laws, authorize courts to carry into effect, upon such terms as shall be just and equitable, the manifest intention of parties and officers, by curing omissions, defects and errors in instruments and proceedings, arising out of their want of conformity with the laws of this State."

In 1857, by an act passed April 17, 1857, vol. 54, 199, the act of 22d March, 1849, was amended by adding before the word " hereafter," the words " heretofore, or," thus giving to the act a retrospective operation, and clearly, I think, reaching the present case, if it be such a retroactive law, as is authorized by the section of the constitution which has been cited. The question, then is, whether there be an omission, defect or error in the instrument executed by the parties, contrary to their manifest intention, and whether the omission, defect or error, arises from such instrument not being in conformity with the laws of the State ? If there be such an omission, defect or error, then the constitution very clearly intends that it may be cured by the action of a court, under a general law passed for the purpose, notwithstanding the prohibition against retroactive laws.

To ascertain the character of the omission, defect or error, in the view of both the legislative enactment and the provision of the constitution, we need not go beyond the class of

cases analogous to the present. In 10 Ohio, 305, *Carr* v. *Williams*, the matter is fully explained. "A deed which is intended to convey the legal estate, but which is so imperfectly executed as to fail of effecting that object, is deprived of the character of a conveyance, but may be treated as an agreement to convey, and a resort may be had to chancery, for the purpose of enforcing it, and compelling a specific performance; or a bill may be filed for the purpose of rectifying the mistake, when the original deed as reformed will take the place of the conveyance which would otherwise be decreed by the court. In either case, however, the complainant has only an. equity, and is obliged, on this account, to go from a court of law to a court of chancery. This is the general principle, but the question now intended to be presented is one of more particularity. It is whether the deed of *a feme covert*, not executed according to the statute may be regarded as an agreement to convey, the specific performance of which will be decreed *against her*, or whether a deed, so imperfect, may be rectified so as to bind her right." * * * *
" Our statute prescribes the mode in which a married woman may execute a conveyance of her land. It directs that she and her husband shall join in the conveyance, and if this provision is not complied with, then the deed stands as it would at common law, absolutely void and inoperative as to her; and if a deed, the body of which was defective, was still to be treated as an agreement to convey, or as an imperfect conveyance, other provisions of the statute equally essential would be disregarded. The acknowledgment and separate examination would not be to such an instrument as the law contemplates."

From the remarks which have been quoted, and, I think, according to the plain and ordinary meaning of the words "omission," "defect," "error," they must apply as well to the body of an instrument, intended by a married woman to operate as a conveyance, as to the prescribed forms attending its execution and acknowledgment. If there be one witness instead of two, or the separate examination of the

wife, though, in fact, had, be not certified, it is no more an omission, defect or error, than the leaving out words of inheritance, or, as in this case, and in the case of *Carr* v. *Williams*, the omission to join the wife in the granting clause.

The law requires, for the divesting the title of a *feme covert*, an acknowledgment in a prescribed form of a deed of conveyance, with apt words, to pass the legal estate; and, as is clearly shown in the authority cited, an omission or defect, in either respect, is not in conformity with the laws of the State. The act is, therefore, such a retroactive law as may be passed under the present constitution and was clearly authorized by the former. 2 Ohio State, 152 and 431.

The same argument which shows that, in this case, there is an omission or defect to be cured, demonstrates that the act of the legislature allowing it to be done, does not violate the constitution of the United States by impairing the obligation of a contract. The object of the act is to enforce, not to impair the obligation of the contract. It rather creates an obligation where none existed before, than destroys one already existing. It may, with more propriety, be claimed that the act divests what might be regarded as vested rights. Not more than one year ago Lorenia Goshorn might have been regarded as legally entitled to an estate, in reversion, of great value to be possessed by herself or her heirs, and now, by the insertion of two words in an act of the legislature, she is substantially divested of that estate, and under the judgment of the court, which, but for this change in the act, could not have been rendered, it is to be vested in the plaintiff. But it is very clearly settled that the legislature may give a remedy on a contract founded on a valuable consideration, when no remedy exists, and may authorize a suit when justice and good conscience so require, and this does not impair the obligation of the contract, nor conflict with the federal constitution. 1 Ohio State, 362–368. " It is clear," says the supreme court of the United States, " that this court has no right to pronounce an act of the State legislature void, as contrary to the constitution of the United States, from the

mere fact that it divests antecedent vested rights of property." *Watson* v. *Mercer*, 8 Peters, 88, 110. And, in the strong language of Parker, C. J., "the truth is, there is no such thing as a vested right to do wrong; and a legislature which, in its acts, not expressly authorized by the constitution, limits itself to correcting mistakes, and to providing remedies for the furtherance of justice, can not be charged with violating its duty, or exceeding its authority." 16 Mass. 273. *Foster* v. *Essex Bank.*

In view of these principles, which must control my decision upon the facts found or admitted, there will be a judgment for the plaintiff, giving the relief asked.

Decree for plaintiff.